# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KENNETH ENGLISH, )
    Claimant-Appellant, )
    Cross-Appellee, )
v. )     C.A. N15A-05-007 PRW
)
REED TRUCKING, )
    Employer-Appellee, )
    Cross-Appellant. )

Appeal Decided: March 24, 2016
Opinion on Appeal Withdrawn: April 25, 2016
Appeal Re-submitted and Cross-Appeal Submitted: May 2, 2016
Decided: July 6, 2016

*Upon Appeal from the Decision of the Industrial Accident Board.*
**AFFIRMED.**

## OPINION AND ORDER

Gary S. Nitsche, Esquire and Samuel D. Pratcher, Esquire, (argued), Weik, Nitsche, Dougherty & Galbraith, Wilmington, Delaware, Attorneys for Claimant-Appellant Kenneth English.

Joseph Andrews, Esquire, (argued), Hoffman Andrews Law Group, Dover, Delaware, Attorney for Employer-Appellee Reed Trucking.

**WALLACE, J.**

## I. INTRODUCTION

The Industrial Accident Board (the "Board") granted Kenneth English's Petition to Determine Additional Compensation Due and ordered Reed Trucking to pay Mr. English's medical witness costs.[1] Kenneth English appeals the Board's percentage of impairment determination made in its decision granting his Petition. Reed Trucking cross-appeals the Board's grant of medical witness costs to Mr. English.

In its decision, the Board found that Mr. English sustained five percent impairment of his right upper extremity. Mr. English complains the Board's decision granting only that level of impairment is not supported by substantial evidence because "the Board erred in finding that [Mr. English] had an eight percent impairment to his uninjured shoulder."[2] Essentially, Mr. English argues that the Board erred in crediting his employer's expert, Dr. Andrew Gelman, over the testimony of his own expert, Dr. Stephen J. Rodgers. Mr. English's employer, Reed Trucking, argues that the Board's decision to accept "one expert's testimony over the contradictory testimony of another expert constitutes substantial evidence in and of itself."[3]

---

[1] *English v. Reed Trucking,* Hearing No. 1405378 (Apr. 27, 2015) (determination of additional compensation due) [hereinafter IAB Dec.].

[2] Appellant's Opening Br. 11.

[3] Employer's Answering Br. 25.

Because the Board relied on adequate evidence and awarded compensation to Mr. English, its decision granting Mr. English's October 2014 Petition to Determine Additional Compensation Due and also awarding him medical witness costs is hereby **AFFIRMED**.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. English worked as a driver for Reed Trucking.[4]  On August 5, 2013, while pulling a pallet down to unload his truck, he injured his right rotator cuff.[5] He notified Reed Trucking, which acknowledged his injury was compensable. Reed Trucking paid for Mr. English's treatment and other benefits, including a right rotator cuff repair performed by orthopedic surgeon, Dr. Evan Crain, a couple of months after the work incident.[6]

In September 2014, Mr. English's expert, Dr. Rodgers, evaluated Mr. English's right shoulder and concluded that its permanent impairment was at thirteen percent based on the American Medical Association (the "AMA") Guidelines, Fifth Edition.  In January 2015, Reed Trucking had Mr. English evaluated by their expert, Dr. Gelman, who determined Mr. English's impairment was two percent using the AMA, Fifth Edition or five percent under the Sixth

---

[4]     Industrial Accident Board Hearing Record at 46 (Apr. 2, 2015) [hereinafter IAB Hrg. R.].

[5]     *Id.*

[6]     *Id.* at 48.

Edition. Based on this, Reed Trucking stipulated to the greater of their own expert's findings, *i.e.*, that Mr. English was five percent impaired.

## A. MR. ENGLISH'S PETITION FOR ADDITIONAL COMPENSATION DUE.

Reed Trucking had paid for certain treatment and paid other workers' compensation benefits related to Mr. English's August 2013 injury. Nonetheless, based on Dr. Rodgers' recommendation, Mr. English, through counsel, filed a Petition to Determine Additional Compensation Due in October 2014. About a month prior to the hearing date, Reed Trucking made a settlement offer of eight percent. Mr. English rejected that offer.

On April 2, 2015, a hearing officer and two Board members held an administrative hearing to determine Mr. English's permanent impairment to his right upper extremity.[7] The Board issued a decision granting the petition for additional compensation and ordering Reed Trucking to reimburse Mr. English's medical witness costs.[8] Mr. English filed a timely appeal;[9] Reed Trucking cross-appealed.

---

[7] IAB Dec. at 2.

[8] *Id.* at 12–14.

[9] DEL. CODE ANN. tit. 19, § 2349 (2015).

-4-

**B. The Hearing on Mr. English's Petition for Additional Compensation Due.**

**1. Mr. English's Testimony**

Mr. English testified on his own behalf. He denied having prior injuries to either of his shoulders.[10] Mr. English testified that surgery helped with his right shoulder pain and that he only has stiffness and limited range of motion now.[11] He also testified he is back to work at this time as a freight driver for UPS; that job does not require him to lift heavy packages.[12] He has had no subsequent injury to either shoulder.[13]

**2. Mr. English's Medical Expert**

Dr. Rodgers testified that he is board certified in occupational medicine.[14] During his September 2014 examination, Mr. English complained of a stiff shoulder, limited range of motion, and difficulty throwing, reaching, and rotating.[15] Dr. Rodgers reviewed Mr. English's history and medical records.[16] He also

---

[10]     IAB Hrg. R. at 46.

[11]     *Id.* at 48.

[12]     *Id.* at 51, 53.

[13]     *Id.* at 49.

[14]     *Id.* at 6.

[15]     *Id.* at 13.

[16]     *Id.* at 8–13.

thoroughly examined Mr. English, measuring his internal and external rotation.[17] During his testimony, Dr. Rodgers also demonstrated to the Board how he examined Mr. English's left shoulder.[18]

Dr. Rodgers testified that he used the AMA Guidelines, Fifth Edition, to rate Mr. English's impairment.[19] Dr. Rodgers agreed that the use of the AMA Guidelines is important because these Guidelines provide "the only standard that exists out there. . . . for calculating impairments."[20] Dr. Rodgers said he chose to use the Fifth Edition because the Sixth Edition "is still a work in progress" and the "diagnosis based estimate method in there is very difficult to use."[21] When later responding to the Board's questions, Dr. Rodgers revealed that the Sixth Edition has been around since 2008 and that he was a contributor to the casebook for the Guidelines.[22]

Based on Mr. English's history, medical records, and physical examination, Dr. Rodgers concluded that Mr. English's impairment rating was thirteen percent

---

[17]     *Id.* at 15–16.

[18]     *Id.* at 17–18.

[19]     *Id.* at 26.

[20]     *Id.*

[21]     *Id.* at 23.

[22]     *Id.* at 42–43.

using the AMA Guidelines, Fifth Edition.[23] Dr. Rodgers testified that under the Fifth Edition, unlike the Sixth, values are combined for determining upper extremity impairment.[24] The first value used is based on range of motion and the second value is for other conditions, such as surgery.[25] Accordingly, Dr. Rodgers rated Mr. English's range of motion impairment as three percent and, using his clinical judgment, Dr. Rodgers compared measurable impairment results from analogous conditions listed in the Guidelines with that of Mr. English's unlisted condition and arrived at a rating of ten percent for the second value.[26]

Dr. Rodgers acknowledged that some people can have a greater or lesser range of motion – without injury – compared to the AMA Guidelines' "normal" range of motion.[27] Dr. Rodgers also acknowledged that, although not required, the Fifth Edition suggests that the baseline for a non-injured shoulder be subtracted when determining permanency.[28] And so, Dr. Rodgers testified that what Dr. Gelman did – compare the uninjured shoulder to the injured shoulder –

---

[23]     *Id.* at 16.

[24]     *Id.* at 20.

[25]     *Id.* at 20–22.

[26]     *Id.* at 21–22.

[27]     *Id.* at 36.

[28]     *Id.* at 23.

corresponds with the AMA, Fifth Edition.[29]  Unlike Dr. Gelman, Dr. Rodgers found no impairment or restriction in Mr. English's left shoulder.[30]

### 3. Reed Trucking's Medical Expert

Dr. Gelman, a board certified orthopedic surgeon, testified by deposition.[31] He examined Mr. English in January of 2015.[32]  Mr. English's primary complaint was stiffness and a lack of range of motion in his right shoulder.[33]  Dr. Gelman examined Mr. English's neck and both upper extremities.[34]  He measured both shoulders' range of motion.[35]  Dr. Gelman testified that to determine permanent impairment, he looked at Mr. English's symptoms through both the Fifth and Sixth Editions of the AMA Guidelines.

Dr. Gelman testified that according to the AMA Guidelines, his "role would be to identify what factors or parameters would best apply with regards to addressing impairment."[36]  Using the Fifth Edition, he "determined that the range

---

[29]    *Id.* at 36–37.

[30]    *Id.* at 17–19, 40.

[31]    Dr. Gelman Dep. Tr. at 5.

[32]    *Id.* at 7.

[33]    *Id.* at 9.

[34]    *Id.* at 10.

[35]    *Id.* at 10–11.

[36]    *Id.* at 16.

-8-

of motion methodology would be the best and most appropriate method to rate Mr. English."[37] For Mr. English's left shoulder – the uninjured shoulder – based on the numbers calculated for forward flexion, abduction, rotation, extension, and adduction, Dr. Gelman determined Mr. English would have a permanency of eight percent under the AMA Guidelines, Fifth Edition.[38] Dr. Gelman testified that he then "took the ranges of motion [of Mr. English's right side that he had computed and] compared that to his baseline normal left side, [which] yields a two percent upper extremity impairment."[39]

Dr. Gelman also determined Mr. English's impairment under the AMA, Sixth Edition.[40] Dr. Gelman opined that the Sixth Edition more appropriately addresses Mr. English's case, as the Sixth Edition is "more of a diagnosis-based method versus a range of motion method."[41] Although more complicated, the Sixth Edition "methodology would take into consideration the dominating factor or pathology."[42] Dr. Gelman testified he considered the rotator cuff pathology which

---

[37]     *Id.*

[38]     *Id.* at 11.

[39]     *Id.* at 16.

[40]     *Id.* at 18.

[41]     *Id.* at 19.

[42]     *Id.* at 19–20.

was the dominating pathology addressed by Dr. Crain surgically.[43]  Dr. Gelman's Sixth Edition assessment yielded an impairment of five percent.[44]

Dr. Gelman agreed that Dr. Rodgers rated his assessments using the AMA Guidelines, Fifth Edition.[45]  But Dr. Gelman testified that he could not explain why or how he disagreed with Dr. Rodgers' thirteen percent impairment rating because it was unclear to him from Dr. Rodgers' report what method Dr. Rodgers used to reach his impairment rating.[46]  Dr. Gelman explained, however, that using Dr. Rodgers' range of motion numbers "would equate to [a] three percent" impairment rating under the Fifth Edition.[47]  That is so, because Dr. Rodgers' ranges of motion were generally better than those taken by Dr. Gelman four months later.[48]

### 4. The Board's Decision

In its April 27, 2015 decision, the Board granted Mr. English's Petition, but found he suffered a five percent permanent impairment to his right shoulder in accordance with Dr. Gelman's findings.[49]  The Board recounted the Petition's

---

[43]  *Id.* at 19.

[44]  *Id.* at 18.

[45]  *Id.* at 26.

[46]  *Id.* at 26–27.

[47]  *Id.* at 27.

[48]  *Id.* at 25.

[49]  IAB Dec. at 14.

procedural history and the hearing testimony. [50] Taking into account the doctors' and Mr. English's testimony, the Board decided that Dr. Gelman used the appropriate method to rate Mr. English's impairment.

"The Board accept[ed] Dr. Gelman's opinion as more credible and reliable than Dr. Rodger's [sic] opinion in this case."[51] The Board found that Mr. English "sustained a 5% permanent partial impairment of the right upper extremity" based on the AMA Guidelines, Sixth Edition.[52] The Board also found that Dr. Rodgers' thirteen percent rating "overstates and does not accurately reflect [Mr. English's] true loss of use."[53] For example, ten percent of Dr. Rodgers' rating "was based on the use of an analogous procedure listed in the Fifth Edition" since Mr. English's specific surgical procedure was not listed.[54] Conversely, Dr. Gelman's rating under the Sixth Edition "was based specifically on the type of injury [Mr. English] sustained and adjusted based on the loss of range of motion and other factors."[55]

As mentioned, the Board determined that Mr. English suffered a five percent permanent impairment to his right shoulder. Based on that determination, the

[50]    *Id.* at 2–12.

[51]    *Id.* at 13.

[52]    *Id.*

[53]    *Id.*

[54]    *Id.*

[55]    *Id.*

-11-

Board concluded: "Having received an award, [Mr. English] is entitled to have his medical witness fees taxed as a cost against [Reed Trucking]."[56]

## III. STANDARD OF REVIEW

This Court has repeatedly emphasized the limited extent of its appellate review of the Industrial Accident Board's decisions: the Court must determine if the Board's factual findings are supported by substantial evidence in the record[57] and whether its decision was legally correct.[58]

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[59] The Court must, therefore, review the record to determine if the evidence is legally adequate – *i.e.*, includes some substantial evidence – to support the Board's factual findings. In doing so the Court evaluates the record in the light most favorable to the prevailing party, here, Reed Trucking (prevailer on the discreet contested issue of level of physical impairment), to determine whether substantial evidence existed to reasonably

---

[56] *Id.* at 14. The Board mistakenly wrote that the medical witness fees would be "taxed as a cost against *the State*." *Id.* This was clearly a typographical error as such costs are taxed against an employer or the employer's insurance carrier. DEL. CODE ANN. tit. 19, § 2322(e) (2015) ("The fees of medical witnesses testifying at hearings before the Industrial Accident Board on behalf of an injured employee shall be taxed as a cost *to the employer or the employer's insurance* carrier in the event the injured employee receives an award.") (emphasis added).

[57] *Histed v. E.I. duPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[58] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[59] *Histed*, 621 A.2d at 342 (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

support the Board's conclusion.[60] The Court does not "weigh evidence, determine questions of credibility or make its own factual findings."[61] Rather, the Court must afford "a significant degree of deference to the Board's factual conclusions and its application of those conclusions to the appropriate legal standards."[62] For it is the Board, not the Court, that is responsible for deciding which medical expert is more credible.[63] And so, the Court does not parse the expert's testimony in order to reach its own decision about which expert is more convincing;[64] only if the Court finds that the Board's determination on expert witness credibility is unsupported by some substantial competent evidence to support the finding, may the Court overturn the Board's decision.[65]

---

[60] *Burmudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Ct. Aug. 16, 2006).

[61] *Olney*, 425 A.2d at 614.

[62] *Burmudez*, 2006 WL 2382793, at *3 (citing DEL. CODE ANN. tit. 29 § 1142(d)).

[63] *See Clements v. Diamond State Port. Corp.*, 831 A.2d 870, 877-78 (Del. 2003); *see also, Coleman v. Dep't of Labor*, 288 A.2d 285, 287 (Del. Super. Ct. 1972).

[64] *Clements*, 831 A.2d at 878; *Fieni v. Catholic Health East*, 2014 WL 2444795, at *2 (Del. Super. Ct. Apr. 29, 2014).

[65] *See Clements*, 831 A.2d at 877–78; *see also, Carey v. H & H Maintenance*, 2001 WL 985114, at *2 (Del. Super. Ct. Aug. 6, 2001).

Where the Court must interpret the meaning of a statutory provision, the Court's review is *de novo*.[66] "A reviewing court may accord due weight, but not defer, to an agency interpretation of a statute administered by it."[67]

## IV. PARTIES' CONTENTIONS

### A. MR. ENGLISH'S APPEAL.

On appeal, Mr. English argues he is thirteen percent impaired and the Board's finding that he has an eight percent impairment baseline – bringing his net compensable impairment down to five percent – is unreasonable and unsupported. He argues that the Board's decision "does not state how it came to a determination that [Mr. English] had an eight percent impairment to his uninjured shoulder" and "fails to address that a physical examination was done at the hearing."[68] At

---

[66] *See Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 382-83 (Del. 1999) ("Statutory interpretation is ultimately the responsibility of the courts.").

*See also Del. Valley Field Servs. v. Ramirez*, 105 A.3d 396, 402 (Del. Super. Ct. 2012), *aff'd sub nom., Del. Valley Field Servs. v. Melgar-Ramirez*, 61 A.3d 617 (Del. 2013) (holding that a workers' compensation claimant met the statutory definition of "employee" under Delaware's Workers' Compensation statute, even though he was an illegal alien, because the statute defined "employee" broadly to mean "every person," and because the statute specifically excluded other categories of persons, but not "illegal aliens"); *Workers' Comp. Fund v. Transp. Servs., Inc.*, 812 A.2d 877, 879 (Del. 2002) (reviewing *de novo* whether a displaced worker qualified for total disability benefits under the statute); *DeVille Court Apartments v. Long*, 2000 WL 305329, at *1-2 (Del. Super. Ct. Mar. 16, 2000), *aff'd*, 763 A.2d 90 (Del. 2000) (reviewing *de novo* whether the Industrial Accident Board erred in construing provision of workers' compensation law).

[67] *Pub. Water*, 735 A.2d at 382-83.

[68] Appellant's Opening Br. 11.

-14-

bottom, Mr. English argues that the Board erroneously accepted Dr. Gelman's expert testimony over that of Dr. Rodgers.

Reed Trucking responds that the Board's acceptance of one expert's testimony over the contrary opinion testimony of another meets the "substantial evidence" standard.[69] Reed Trucking says, moreover, that because Mr. English stipulated that Dr. Gelman was qualified to rate Mr. English's impairment, the Board could "choose to rely upon Dr. Gelman instead of Dr. Rodgers in this matter."[70] Reed Trucking also suggests that the Board's "Summary of Evidence" section of its decision addressed the physical examination that was done at the hearing. And too, that Dr. Rodgers "admitted that he did not have any way to measure Claimant's ranges of motion at the hearing [and] therefore, could only testify that there were 'minimal deficits today, as there were when I measured it.'"[71]

## B. REED TRUCKING'S CROSS-APPEAL.

Reed Trucking also appeals the Board's decision, arguing that its decision to tax Mr. English's medical witness costs to Reed Trucking was erroneous. Under 19 *Del. C.* § 2322(e), medical witness fees "shall be taxed as a cost to the employer

---

[69]  Employer's Answering Br. 25.

[70]  *Id.* at 26.

[71]  *Id.* at 23.

. . . in the event the injured employee receives an award." Reed Trucking argues that an "award" is limited to "any favorable change of position or benefit, as the result of a Board decision."[72] Reed Trucking stipulated pre-hearing to Mr. English being five percent permanently impaired. In Reed Trucking's view, the IAB proceedings did not result in a favorable change in Mr. English's position, and therefore, he received no "award."[73]

In response, Mr. English argues the Board's decision to award Mr. English five percent permanency is an award within the meaning of § 2322(e).[74] Mr. English argues that there "is no requirement that the Board compare the award to a previously made offer in order for a Claimant to receive medical expert costs;"[75] nor is there a requirement that the Board accept Reed Trucking's stipulated permanency rating.[76] According to Mr. English, he received "an award for his petition to Determine Additional Compensation Due" and therefore, Reed Trucking must pay his medical witness costs.[77]

---

[72] Employer's Opening Br. 11 (citing *Willingham v. Kral Music, Inc.*, 505 A.2d 34, 36 (Del. Super. Ct. 1985)).

[73] *Id.*

[74] Appellant's Reply Br. on Appeal and Cross-Appellee's Answering Br. 13.

[75] *Id.*

[76] Oral Arg. Tr. at 26–27 (Del. Super. Ct. Apr. 25, 2016).

[77] Appellant's Reply Br. on Appeal and Cross-Appellee's Answering Br. 13–14.

## V. DISCUSSION

Two issues must be decided: (1) whether, upon granting Mr. English's petition, the Board's award of five percent impairment was proper; and (2) whether the Board's grant of the petition – in an amount less than Mr. English sought and an amount less than Reed Trucking offered to settle for – was an "award" under the statute triggering the taxing of medical witness costs to the employer, Reed Trucking.

### A. THE BOARD'S DETERMINATION OF THE EXTENT OF MR. ENGLISH'S IMPAIRMENT IS PROPER.

The Court's role is limited to determining whether there was substantial evidence supporting the Board's findings and whether the decision was legally correct.[78] The Board, not the Court, is responsible for deciding which medical expert is more believable on a given point.[79] The Board is entitled to accept the testimony of one medical expert over the testimony of another expert,[80] and the Board certainly does not err by accepting one expert's opinion over that of the other when the Board "set[s] forth the factual basis for its conclusion" and the "factual findings are supported by the record."[81] "The medical testimony of one

---

[78] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[79] *Coleman v. Dep't of Labor*, 288 A.2d 285, 287 (Del. Super. Ct. 1972).

[80] *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 646 (Del. 1993).

[81] *See Clements v. Diamond State Port. Corp.*, 831 A.2d 870, 877 (Del. 2003).

doctor, while not in agreement with that of [another], [i]s sufficient competent evidence" supporting the Board's decision.[82]

The Board heard from Dr. Rodgers and Dr. Gelman. The outcome turned on which expert's opinion the Board credited. The Board accepted Dr. Gelman's opinion that the proper method for determining impairment was under the AMA Guidelines, Sixth Edition and under that edition, Mr. English had an impairment rating of five percent. In its decision, the Board plainly stated that: "The Board accept[ed] Dr. Gelman's opinion as more credible and reliable than Dr. Rodger's [sic] opinion in this case."[83]

The Board determined that Dr. Gelman's use of the Sixth Edition was appropriate in Mr. English's case. In its decision, the Board referenced the testimony of both experts, the testimony of Mr. English, and articulated why it decided to accept Dr. Gelman's opinion. The Board explained why it found that Dr. Rodgers' thirteen percent rating "overstates and does not accurately reflect [Mr. English's] true loss of use."[84] For example, the Board noted that the Sixth Edition specifically listed the type of surgery and injury Mr. English had, while the

---

[82] *Gen. Motors Corp. v. Veasey*, 371 A.2d 1074, 1076 (Del. 1977).

[83] IAB Dec. at 13.

[84] *Id.*

-18-

Fifth Edition did not.[85] The Board noted other evidence supporting its conclusion, such as Mr. English's testimony that his shoulder: "is essentially pain free;" has "stiffness and minor loss of motion in several planes of motion;" and does not "affect his work or activities," other than lifting heavy packages."[86] Accordingly, the Court is satisfied that the Board based its conclusion on factual findings that were supported by substantial evidence.

## B. MR. ENGLISH IS DUE MEDICAL WITNESS COSTS.

The Board was right to tax Mr. English's medical witness fees to Reed Trucking. But for Mr. English filing a petition for additional compensation due based on Dr. Rodgers' report, Mr. English would not have received the five percent permanency award from the Board.

The process begins with the filing of a petition for compensation. Once filed, the petition may be resolved by an agreement between the parties or by an award by the Board.[87] As to this, Reed Trucking agrees.[88] If the parties cannot

---

[85] *Id.*

[86] *Id.*

[87] *See Ellison v. City of Wilmington*, 301 A.2d 303, 306 (Del. Super. Ct. 1972) ("The Statute appears to contemplate that a claim for compensation may be resolved either by agreement or by award.").

[88] Oral Arg. Tr. at 11–12 (Del. Super. Ct. Apr. 25, 2016):

> **Court:** And so two things happen on a petition, as I read the statute, agreement or award. Right?
> **Reed Trucking's Counsel:** Right.

-19-

reach an agreement, the petition goes before the Board for a hearing. Reed Trucking argues that it is the result only of that final evidentiary process – *i.e.*, some greater benefit coming out of the hearing than the settlement offer a claimant had walking in the hearing room door – that defines "award." Not so.

Reed Trucking's reading of 19 *Del. C.* § 2322(e) is belied by two things: (1) the accepted rules of statutory construction; and (2) Delaware courts' broad interpretation of "award" under the Workers' Compensation statute. The language of Delaware's Workers' Compensation statute forecloses an employer's suggestion that to be an "award" triggering its responsibility for medical witness costs, the result must be greater than some settlement offer (or stipulation) made prior to the IAB evidentiary hearing.

Section 2320(10)(b) of Title 19 expressly provides that a claimant cannot receive an attorneys' fee if the employer tenders "an offer to settle an issue pending before the Industrial Accident Board . . . in writing" that is "equal to or greater than the amount ultimately awarded by the Board."[89] But the provision taxing medical witness costs to the employer against which an award is granted has no such rejected-settlement preclusion.[90] And Reed Trucking's attempt to engraft

---

[89]   DEL. CODE ANN. tit. 19, § 2320(10)(b) (2015).

[90]   *Id.* § 2322(e) ("The fees of medical witnesses testifying at hearings before the Industrial Accident Board on behalf of an injured employee shall be taxed as a cost to the employer or the employer's insurance carrier in the event the injured employee receives an award.").

-20-

such – either by settlement offer or pre-hearing stipulation – to § 2322(e) and limit "award" thereunder must be rejected.

The normal rules of statutory construction provide that, in enacting a statute, the General Assembly "is presumed to have inserted every provision for some useful purpose and construction, and when different terms are used in various parts of a statute it is reasonable to assume that a distinction between the terms was intended."[91] And where a particular provision is expressly included in one part of a statutory scheme, but omitted from another, it is reasonable to assume that the legislature was aware of, and intended, that omission.[92] Thus, when the legislature expressly precludes one from obtaining an attorneys' fee if he rejects an earlier settlement but provides no preclusion of medical witness costs, the proper reading is that pre-hearing settlement offers or evidentiary stipulations have no bearing on the taxing of the latter.

The Board has the authority to "make an award ending, diminishing, increasing or renewing the compensation previously agreed upon or awarded . . . ."[93] Generally, an "award" is "any decision or determination rendered

---

[91] *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982).

[92] *See Adoption of Swanson*, 623 A.2d 1095, 1097 (Del. 1993) (citing *Giuricich*, 449 A.2d at 238).

[93] DEL. CODE ANN. tit. 19, § 2347 (2015).

-21-

by arbitrators or commissioners upon a controversy submitted to them."[94] A claimant's ability to recover medical witness fees turns on whether the Board issues an award for compensation.[95] Compensation is not limited to financial gain, and may be "any favorable result of a Board decision," including future permanency.[96] And it is not merely the hearing result (*i.e.*, was it greater than a pre-hearing stipulation or settlement offer), but the result of the entire petition process – from pre-filing position to Board decision – that defines "award" for the purpose of accessing medical witness costs.[97]

---

[94] *Willingham v. Kral Music, Inc.*, 505 A.2d 34, 36 (Del. Super. Ct. 1985).

[95] *Porter v. Daisy Const. Co.*, 2010 WL 153565, at *4 (Del. Super. Ct. Jan. 14, 2010) (affirming the Board's refusal to award medical witness fees, finding the Board's termination of the employee's total disability compensation was not a receipt of an award of benefit), *aff'd*, 5 A.3d 631 (Del. 2010).

[96] *Acme Markets, Inc. v. Fry*, 1991 WL 22370, *4 (Del. Jan. 25, 1991) (citing *Kral Music*, 505 A.2d 34 at 36) ("Consequently, it is apparent that an award of compensation under § 2127(a) is intended to refer to any favorable change of position or benefit, as the result of a Board decision, rather than just being limited to contemporaneous financial gain.")); *Daisy Const.*, 2010 WL 153565, at *4 ("In addition, the Delaware Supreme Court has stated that a claimant may receive a medical witness fee for any favorable change in position such as a determination of a compensable injury, recognition that the Board has jurisdiction over the claim, recognition of the five-year statute of limitations, or the possibility of future permanency and disfigurement benefits.") (citing *Pugh v. Wal-Mart*, 945 A.2d 588 (Del. 2008)).

[97] *See Kral Music*, 505 A.2d at 36 ("*As the result of appellants' various petitions*, [Appellant] now has a vested right to the payment of survivor's benefits from [employer's workmens' compensation carrier] . . .") (emphasis added); *id.* at 37 (distinguishing *Coen v. Ambrose-Augusterfer Corp.*, 463 A.2d 265 (Del. 1983) where the court found there was no "award" – "the employee [in *Coen*] acquired no favorable change of status *as the result of his petitions*. In short, the employee in *Coen* realized nothing . . .") (emphasis added); *Coen*, 463 A.2d at 268 ("because [employee] realized no benefit *as a result of his petition* in this case, he is not entitled to an award of attorney's fees . . .") (emphasis added).

-22-

In a case involving permanency, such as here, there are generally conflicting medical opinions. The Board, however, is not bound by the opinions of the medical experts. "It is the function of the Board, not a physician, to attribute a percentage to a claimant's disability."[98] The Board may even "reach a rating not provided by a doctor so long as the Board explains how it reached that result."[99] But again, the focus is not merely on the evidentiary hearing alone. It is, rather, the entirety of the IAB proceeding process that must be considered in determining whether there is an "award." When the entirety of that process serves a purpose and secures a benefit for the claimant, there is an "award."[100]

Mr. English filed a petition to determine additional compensation due. The Industrial Accident Board proceeding thereon served a purpose and secured him a benefit. The purpose was to obtain compensation in addition to the benefits which Mr. English had received previously from Reed Trucking. The parties did not reach an agreement on how to resolve that petition, so they went before the Board for a hearing. Although Reed Trucking stipulated that Mr. English was five

---

[98]    *Asplundh Tree Expert Co. v. Clark,* 369 A.2d 1084 (Del. Super. Ct. 1975); *Eanes v. Peninsula United Methodist Homes,* 1988 WL 77728 at *5 (Del. Super. Ct. July 1, 1988) ("It is the function of the IAB, not the physician, to determine the claimant's impairment.").

[99]    *Perdue Farms, Inc. v. Dawson,* 1993 WL 80624, at *2 (Del. Super. Ct. Mar. 10, 1993) (citing *Asplundh Tree Expert,* 369 A.2d 1089).

[100]    *Kral Music, Inc. v. Willingham,* 1986 WL 16470, at *1 (Del. Mar. 4, 1986) (in affirming there was an "award," the Court noted "[h]ere . . . the Industrial Accident Board proceeding served a purpose and secured a benefit for claimant").

percent impaired, the Board was not required to award him at least five percent. Nonetheless, based on the April 2, 2015 hearing, the Board determined Mr. English met his burden of proof "that his right upper extremity has resulted in a permanent impairment"[101] and awarded him five percent impairment. Thus, Mr. English benefited from the filing of his petition by establishing his right to additional compensation due. That was the net result of his petition and the IAB proceedings; and that is what defines an "award" for § 2322(e) purposes.[102] The fact that Mr. English may have obtained that net benefit by abbreviating the IAB proceedings on his petition via pre-hearing settlement or stipulation does strip that net result of its true statutory character: an "award" received by an injured employee. Accordingly, the Board correctly taxed Reed Trucking with Mr. English's medical witness costs under § 2322(e).

---

[101]  IAB Dec. at 13.

[102]  *See* n. 97 *supra.*

## VI.   CONCLUSION

For the forgoing reasons, the decision of the Industrial Accident Board granting Kenneth English's October 2014 Petition to Determine Additional Compensation Due and awarding him medical witness costs is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Paul R. Wallace, Judge

Original to Prothonotary

cc:    All counsel via File & Serve